USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5-31-17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

LORETTA C. MACKAY,

                        Plaintiff,

-v-

MARK I. MASSAD, REGINA L. MASSAD, KELLY
MASSAD INVESTMENT CO., and HERMES GROUP
LLP,

                        Defendants.

------------------------------------------------------------------X

16 Civ. 6906 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

In this diversity action, plaintiff Loretta C. Mackay seeks to recover under a secured promissory note (the "Note") entered into between herself and defendants Mark I. Massad and Regina L. Massad (collectively, the "Massads"). Mackay also sues Kelly Massad Investment Co. ("KMI"), a guarantor on the Note, and The Hermes Group LLP ("The Hermes Group"), a partnership in which Mark Massad was once a member, but neither of these corporate entities has appeared in this action. Before the Court are cross-motions for summary judgment on Mackay's sole claim of default under the Note. The sole issue in dispute, and the focus of the parties' mirror-image summary judgment motions, is whether Mackay's claim was brought outside the six-year statute of limitations.

For the reasons that follow, each party's motion for summary judgment is denied.

## I. Background[1]

### A. The Parties

Mackay is the obligee under the Note. Pl. 56.1 ¶ 1; L. Mackay Decl., Ex. C ("Note"), at 1. Mackay's late husband Thomas C. Mackay (with Mackay, the "Mackays") was a party to some of the agreements relevant to this action. L. Mackay Decl. ¶ 21. Scott Mackay, a non-party, is Mackay's son and submitted a declaration on her behalf. *See* S. Mackay Opp. Decl. ¶¶ 1–2.

The Massads are the obligors under the Note. Pl. 56.1 ¶ 2; Note at 1.

The Hermes Group, which was previously known as Kelly Massad LLP and which has not appeared in this action, filed a Notice of Withdrawal with the New York State Department of State, Division of Corporations, on June 20, 2013 and is currently in "inactive" status. L. Mackay Decl., Ex. B. The Division of Corporations' records indicate that The Hermes Group operated at 233 Broadway, Suite 2708, in New York, New York. *Id.* Mark Massad was at one time a partner of The Hermes Group, but his "ownership interest and professional affiliation" was terminated on December 31, 2007. Def. 56.1 ¶ 8. Ronald J. Sacco was a general partner of The Hermes Group with Mark Massad. L. Mackay Opp. Decl. ¶ 6. Mark Massad and Sacco

---

[1] The facts which form the basis of this Opinion are taken from the parties' pleadings and submissions in support of and in opposition to the instant motions—specifically, the parties' respective Local Rule 56.1 Statements of Undisputed Fact, Dkt. 47 ("Def. 56.1"), Dkt. 70 ("Pl. 56.1"); the Affidavit of Mark I. Massad in Support of Defendants' Motion for Summary Judgment, Dkt. 43 ("M. Massad Aff."); the Affidavit of Regina L. Massad in Support of Defendants' Motion for Summary Judgment, Dkt. 44 ("R. Massad Aff."); the Affirmation of Robert C. Sentner in Support of Defendants' Motion for Summary Judgment, Dkt. 45 ("Sentner Affirm."); the Declaration of Loretta C. Mackay in Support of Plaintiff's Motion for Summary Judgment, Dkt. 67 ("L. Mackay Decl."); the Declaration of Loretta C. Mackay in Opposition to Defendants' Motion for Summary Judgment, Dkt. 61 ("L. Mackay Opp. Decl."); the Declaration of Scott Mackay in Opposition to Defendants' Motion for Summary Judgment, Dkt. 62 ("S. Mackay Opp. Decl."); and the exhibits attached to these declarations. Facts in dispute are so noted.

were The Hermes Group's only partners.  L. Mackay Decl., Ex. F at 2.  As discussed below, interest payments were made under the Note by both The Hermes Group and RJSacco & Company LLP ("RJSacco & Company").  Def. 56.1 ¶¶ 8–9.  The Court takes judicial notice, *see* Fed. R. Evid. 201, of the publicly available "entity information" on file with the Division of Corporations, which shows that RJSacco & Company is currently registered at 233 Broadway, Suite 2708.[2]

Defendant KMI also has not filed an appearance in this action and was, at least in 1998, a New Jersey general partnership with Sacco and Mark Massad as general partners.  L. Mackay Decl., Ex. E, at 5.  Massads' counsel has represented that both KMI and The Hermes Group "were dissolved some time ago, and prior to the commencement of the pending action."  *See* Dkt. 21 (court order quoting an email to chambers).

### B. The Agreements

On June 8, 1998, Mackay and the Massads entered into three agreements.

First, Mackay and the Massads entered into the Note for $400,000, with the Massads' repayment due no later than December 7, 1999.  Pl. 56.1 ¶ 3.  The interest rate on the principal balance was 8.5% per year from June 8, 1998 to June 7, 1999, and then 10.5% per year from June 8, 1999 to December 7, 1999.  Pl. 56.1 ¶ 6.  In the event of an "Event of Default," the interest rate on the principal balance would become 16% per year until the Note was paid in full.  Note at 1.  An Event of Default occurs when, *inter alia*, the Massads "fail to pay in full any installment of principal of, or interest on, this Note when due."  *Id.*  When an Event of Default occurs, the unpaid principal and all accrued interest may, at Mackay's option and upon written

---

[2] *See Haru Holding Corp. v. Haru Hana Sushi, Inc.*, No. 13 Civ. 7705 (RWS), 2016 WL 1070849, at *2 (S.D.N.Y. Mar. 15, 2016).  The Division of Corporations' database is available at https://appext20.dos.ny.gov/corp_public/CORPSEARCH.ENTITY_SEARCH_ENTRY.

notice to the Massads, become due immediately. *Id.* After an Event of Default, Mackay also may seek costs of collection, including attorneys' fees and court costs. *Id.* at 2. The Note was "secured by the pledge of certain collateral." *Id.* The Note is governed by New York law. *Id.* Mark and Regina Massad each signed the Note. *Id.*

Second, the Massads, KMI, and the Mackays entered into a "Security Agreement" dated June 8, 1998. L. Mackay Decl., Ex. D. The collateral under the Security Agreement is listed in an exhibit. It lists equity and member interests in a variety of corporate entities affiliated with the Massads, including: The Hermes Group, LLC; Hermes Investment Group I, LLC; DDS Partners, LLC; KMI; and Kelly Massad LLP. *Id.*, Ex. A.

Third, the Mackays entered into a "Guaranty Agreement" with KMI. L. Mackay Decl., Ex. E. The agreement was signed by Mark Massad and Sacco as general partners of KMI. *Id.* at 5. KMI unconditionally guaranteed the payments of the Note. *Id.* at 1.

On March 1, 2004, the Massads, KMI, The Hermes Group, and the Mackays entered into an agreement (the "March 1 Agreement") to substitute one life insurance policy on Mark Massad's life, which The Hermes Group had earlier delivered to Mackay as additional security for the Note, for a different life insurance policy. L. Mackay Decl., Ex. F. The March 1 Agreement acknowledged that "[t]he principal sum of the Note was to be paid in full, together with all accrued interest, no later than December 7, 1999 (the 'Due Date')" and that the Note "was not paid by the Due Date." *Id.* at 1. However, the March 1 Agreement also states that the parties "confirm that the Note, the Security Agreement and the Guaranty Agreement are and shall continue in full force and effect." *Id.* at 3.

On March 12, 2004, John Hancock Life Insurance Company assigned Mark Massad's life insurance policy to Mackay. L. Mackay Decl., Ex. G.

4

### C. Payments Made and Notice of Default

It is undisputed that the Massads have made two payments toward the principal sum of the Note, $50,000 in December 2000 and $115,902.84 in March 2001, leaving $234,097.16 in unpaid principal. *See* Pl. 56.1 ¶ 22; Def. 56.1 ¶ 3; L. Mackay Decl., Ex. F at 1.

It is also undisputed that The Hermes Group and RJSacco & Company made frequent payments, often monthly, to Mackay. L. Mackay Decl. ¶¶ 27–29. These payments covered monthly accrued interest and were not payments toward the Note's principal. *Id.*; *see also* Sentner Affirm., Ex. B (summarizing monthly payments between July 1999 and June 2016). Mackay's records indicate that The Hermes Group made payments between July 2002 and December 2011, and that RJSacco & Company made payments between January 2012 and June 2016. L. Mackay Decl., Ex. H.

In addition, Mackay provided a memorandum dated June 9, 2003 from Sacco to Thomas Mackay on The Hermes Group's letterhead. *Id.* The "re:" line reads "2003 Interest Payments," and includes a chart with columns for the Date, Interest, Medical, Net, Paid, and Check number. *Id.* The figure in the Medical line was subtracted from the Interest figure to result in the Net and Paid figures. *Id.*

Finally, on July 25, 2016, Mackay, through counsel, made a written demand to the Massads for payment of the remaining $234,097.16 principal balance on the Note. L. Mackay Decl., Ex. I.

### D. The Parties' Declarations

The parties each submitted declarations on the competing motions for summary judgment. These declarations centered on facts purportedly relevant to the Massads' assertion that Mackay brought this suit upon the Note outside the six-year statute of limitations.

In support of their motion, the Massads submitted an affidavit from Mark Massad, in which he states: "Neither [The Hermes Group] nor RJSacco [& Company] were authorized to act as my or Regina's agent for purposes of making payments to the Plaintiff on our personal behalf. . . . Neither Regina nor I made any partial payments on the principal amount set forth in the Note, or interest payments, other than the two payments of principal referenced above, made in December 2000 and March 2001." M. Massad Aff. ¶¶ 9–10.

In support of her motion, Mackay submitted a declaration attesting that "[f]rom July, 1999 through June, 2016, payments of accrued interest monthly were voluntarily made by or on behalf of the Defendants towards principal and interest owed under the Note." L. Mackay Decl. ¶ 27. Mackay stated that "[a]lthough the Note originally had a maturity date, I did not call the Note or hold Defendants in default since they continued to make payments to me under the Note each month from July, 1999, through June, 2016." *Id.* ¶ 28. In her opposition to the Massads' motion, Mackay submitted declarations from herself and Scott Mackay that recount statements by Sacco to the effect that Mark Massad would send Sacco one-half of the interest amount due under the Note and Sacco would send Mackay a check for the full amount. L. Mackay Opp. Decl. ¶¶ 16–21; S. Mackay Opp. Decl. ¶¶ 6–9.

### E. Procedural History

This case was filed on September 1, 2016. Dkt. 1. On October 21, 2016, the Massads answered the complaint. Dkts. 11–12. Pursuant to an order entered by the Honorable Analisa Torres, to whom this case was then assigned, each party filed its opening summary judgment

motion on February 28, 2017. Dkts. 31, 66.[3] On April 5, 2017, as the motions were being briefed, the case was transferred to the undersigned.

## II.     Applicable Legal Standards

To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of demonstrating the absence of a question of material fact. In making this determination, the Court must view all facts "in the light most favorable" to the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008).

To survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). Only disputes over "facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether there are genuine issues of material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

---

[3] Due to docketing errors, Mackay had to re-file her motion papers four times. *See* Dkt. 37, 48, 50, 54–55, 66. Mackay's counsel is reminded to carefully review and comply with the Electronic Case Filing Rules & Instructions for this District.

**III.    Discussion**

As the parties agree, the statute of limitations for an action upon a secured note is six years.  N.Y. C.P.L.R. § 213(2).  The sole contested issue is how that limitations period applies to the parties' Note.

But for Mackay's claims of partial payment, the statute of limitation would have expired long ago.  By the Note's clear terms, the Massads defaulted on December 7, 1999, when the principal was due.  Accordingly, the statute of limitations would have expired in December 2005.  *See, e.g.*, *Orix Fin. Servs., Inc. v. Barnes*, No. 05 Civ. 9665 (RJH), 2007 WL 2825881, at *9 n.4 (S.D.N.Y. Sept. 28, 2007) ("[A]ction to recover payment on promissory notes and a personal guaranty' was timely filed where 'commenced within six years of . . . debtor's default." (quoting *N. Fork Bank v. Healy*, 638 N.Y.S.2d 371, 371 (App. Div. 1996))).

Partial payment under a defaulted promissory note, however, may renew the statute of limitations.  *U.S. Bank Nat. Ass'n v. Martin*, 41 N.Y.S.3d 550, 552 (App. Div. 2016).  "In order to demonstrate that the statute of limitations has been renewed by a partial payment, it must be shown that the payment was 'accompanied by circumstances amounting to an absolute and unqualified acknowledgment by the debtor of more being due, from which a promise may be inferred to pay the remainder.'"  *Id.* (quoting *Lew Morris Demolition Co. v Bd. of Educ. of City of N.Y.*, 355 N.E.2d 369, 371 (N.Y. 1976)).  Payments made by one obligor do not extend the statute of limitations as to other joint obligors or guarantors.  *See In re Dreier LLP*, 421 B.R. 60, 64 (Bankr. S.D.N.Y. 2009) (citing *Peoples Trust Co. v. O'Neil*, 7 N.E.2d 244, 245–46 (N.Y. 1937)).  If, however, partial payments are made by a guarantor as an agent of the obligor, those payments will extend the statute of limitations as to both.  *See Pomaro v. Quality Sheet Metal, Inc.*, 743 N.Y.S.2d 556, 557–58 (App. Div. 2002) (citing *Peoples Trust Co.*, 7 N.E.2d at 244).

In this case, there are triable and disputed issues of material fact as to whether the monthly interest payments made by The Hermes Group or RJ Sacco & Company were on behalf of the Massads and whether those payments were "accompanied by circumstances amounting to an absolute and unqualified acknowledgment" of the outstanding debt. The parties dispute whether these payments were made on behalf of the Massads. The Massads attest that neither The Hermes Group nor RJ Sacco & Company were "authorized to act as [their] agent for purposes of making payments to the Plaintiff on [their] personal behalf." M. Massad Aff. ¶ 9. Mackay, in contrast, attests that the monthly payments from 1999 to 2016 were "voluntarily made by or on behalf of the Defendants towards principal and interest owed under the Note." L. Mackay Decl. ¶ 27. If, for example, the monthly payments by The Hermes Group were on the behalf of the Massads, this lawsuit would be timely: the final payment by The Hermes Group was in December 2011 and this action was brought in September 2016, less than five years later. *See, e.g.*, *Pomaro*, 743 N.Y.S.2d at 557–58. If, however, these monthly payments were not made with the authorization of the Massads, the claims against the Massads would be time-barred, because the Massads' final payment was in 2001.

There is evidence favoring each side's claim. Mackay can fairly argue the inference that the monthly payments must have been on behalf of the Massads, for otherwise there would be no apparent reason for a third party to pay these sums. Mackay and her son separately attest that Sacco told them that Mark Massad would send Sacco one-half of the interest amount due under the Note and that Sacco, through The Hermes Group, would then send a check to Mackay for the full amount of interest due. L. Mackay Opp. Decl. ¶¶ 16–21; S. Mackay Opp. Decl. ¶¶ 6–9. If admitted, that statement, too, would favor Mackay. On the present record, however, there is an evidentiary obstacle to receipt of this evidence to the extent it is offered for the truth of the

9

matter asserted by Sacco, to wit, that the funds Sacco was paying derived from Massad. Mackay argues that Sacco's out-of-court statements are admissible as statements "against pecuniary interest," L. Mackay Opp. Decl. ¶ 19; *see* Fed. R. Evid. 804(b)(3), but even if so, Rule 804(b) requires that the declarant be unavailable as a witness. Mackay as yet has not substantiated that Sacco is unavailable to testify at trial. On the present record, therefore, Sacco's statements cannot be considered on summary judgment for the truth of the matter asserted by Sacco. *See, e.g.*, *Pavlica v. Behr*, No. 03 Civ. 9628, 2005 WL 3181586 (DC), at *2 (S.D.N.Y. Nov. 29, 2005). In any event, Mackay's evidence is contradicted by the contrary testimony of the Massads to the effect that the month interest payments were not made on their behalf. *See* M. Massad Aff. ¶¶ 8–10; R. Massad Aff. ¶ 2.

To be sure, the Massads have not provided any explanation as to why The Hermes Group or RJSacco & Company would have gratuitously made monthly interest payments on a debt owed by the Massads.[4] Nevertheless, "where a [party's] testimony [is] 'not contradictory or rife with inconsistencies such that it [is] facially implausible,' the evidence presents 'a question of "he said, she said," on which the court cannot . . . take a side at the summary judgment stage.'" *Bale v. Nastasi*, 982 F. Supp. 2d 250, 259 (S.D.N.Y. 2013) (omission in original) (quoting *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 726 (2d Cir. 2010)).

There is, therefore, a genuine dispute of material fact of whether the monthly payments were made on the Massads' behalf. Each party's motion for summary judgment must be denied.

---

[4] On the present record, it is also unclear what events prompted The Hermes Group and RJSacco & Company, as opposed to KMI, the guarantor under the Guaranty Agreement, to make these monthly payments. The Court expects that this issue will be clarified at trial.

## CONCLUSION

For the foregoing reasons, the Court denies Mackay's motion for summary judgment and denies Massad's motion for summary judgment.

As neither party has demanded a jury trial, the Court assumes that the parties wish to proceed by bench trial. Accordingly, it is ORDERED that:

1. By July 12, 2017,[5] the parties shall file their joint pretrial order, pretrial filings, and additional submissions in non-jury cases, as outlined in Rule 5 of this Court's Individual Rules and Practices in Civil Cases; and

2. By July 19, 2017, each party may submit any filings in opposition.

Following receipt of these materials, the Court will schedule a final pretrial conference and a trial date.

The Clerk of Court is directed to terminate the motions at Dkts. 31, 42, 55, and 66.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: May 31, 2017
New York, New York

---

[5] The Court has set this date six weeks from now, on the understanding that the parties intend to attempt at this juncture to resolve this case. *See* Dkt. 73.